Green, Judge,
delivered the opinion:
The questions involved in the case are wholly as to the ultimate facts shown by the evidence.
It appears without controversy that the plaintiff and defendant, acting through the Shipping Board, entered into a contract, dated July 24, 1920, whereby the plaintiff agreed to furnish and the defendant to buy a certain quantity of *109 fuel oil in the year 1921. This contract, however, was made to depend upon the plaintiff being able to obtain crude oil from a certain well in Mexico. One factor that entered into the contract was the tax imposed by the Mexican Government upon crude oil taken from the well and the contract also contained a provision that in case the tax was increased during the life of the contract, the price of the oil was also to be increased. The well failed and plaintiff." was unable to complete the contract, of which it duly notified the Shipping Board, and the Shipping Board appears-to have accepted the situation and treated the contract ion the time being as at an end. Up to this point there is no-dispute between the parties.
Plaintiff had a large oil business besides its contract with the Shipping Board and naturally was concerned about its supply of crude oil. In the correspondence that took place between the parties after the failure of the well, the' Shipping Board offered to furnish plaintiff with four cargoes of crude oil at a certain price and on certain terms which included, among other things, “ all Mexican taxes paid.” The four cargoes were purchased by the plaintiff on: a c. i. f. (cost, insurance, and freight) basis. The Atlantic Gulf Oil Corporation had previously sold these four cargoes-of oil to the Shipping Board under a contract which provided, “ the seller to pay all taxes.” One of the controversies in the case is in relation to the taxes on these four-cargoes of oil. How this controversy arose will be seen: more definitely when the further transactions between the parties are considered.
After purchasing the four cargoes above referred to,, plaintiff obtained a new source of supply of crude oil and proposed to resume the contract of July 24, 1920, after the-four cargoes had been delivered. The correspondence that took place shows that an understanding was. reached by the-parties that the contracts should be resumed. Both parties thereafter treated the original contract as in force and effect and it must be now so treated so far as the delivery of oil was concerned. Later, the contract was amended making: some changes in the price of the oil and the hire of the- *110 steamers wbicli transported it. None of these changes are material to the decision of the case, but there was a further amendment of the contract to the effect that the Shipping Board -would give plaintiff a credit of 30 cents per barrel on an amount of crude oil equivalent to the fuel oil held in storage under the contract as of date June 1, 1921. The original contract also contained a provision to the effect that if the Mexican export taxes should be increased during the life thereof, 62y% per cent of such increase should be charged to the defendant. It appears that the taxes were increased and plaintiff claims it was not paid the full amount under this provision and that it was not paid the dull amount due it of 30 cents per barrel on the fuel oil which it held in storage on June 1,1921.
On December 30, 1921, a further contract was made between the parties providing for deliveries of fuel oil by the plaintiff in 1922, but there is nothing in its provisions or in the manner in which it was performed which affects the question of whether the four cargoes of oil were included in the contract for delivery of fuel oil in the year 1921. It will be observed there were three contracts for the delivery of fuel oil — one dated May 18, 1920, for delivery during the year 1920; one dated July 24, 1920, for delivery in 1921; and one dated December 30, 1921, for delivery in 1922. In both the findings and the opinion the contract for delivery in 1921 is sometimes referred to as the “ 1921 contract,” and the contract for delivery in 1922, as the “ 1922 contract.”
More specifically stated, the issues between the plaintiff and defendant are as follows:
First, were the four cargoes of oil above referred to in-cluded in a contract making the defendant liable for any increase in the Mexican export tax on oil ?
.Second, should the amount of the said four cargoes of oil be added to or included in the amount of fuel oil held in storage by plaintiff under the contract as of June 1, 1921, thereby making the Shipping Board liable to the plaintiff for 30 cents per barrel thereon?
Third, did defendant pay for any oil delivered under the 1922 contract at prices fixed by the 1921 contract ?
*111 It is impossible to review all of the testimony in an opinion, and if we could do so we doubt whether there would be any advantage in it. The contract with reference to the four cargoes of oil was made after some negotiations. It is summed up in a letter written by plaintiff on March 11, 1921, which recited:
“We beg to say that we hereby elect to take advantage of the first proposition set forth in the second paragraph of your letter last named to the following extent, viz:
“We will purchase from you light Mexican crude oil at $1.35 per barrel, f. o. b. your ships (all taxes paid) in sufficient quantity to load four ships which you will charter to us at contract charter party rates and for such delivery as we may specify.”
To this letter the defendant replied confirming the agreement set out above. Later, for reasons unnecessary to state here, this contract was modified so that plaintiff was to pay $2.15 per barrel for the oil delivered at its refinery at Philadelphia. Some other matters are mentioned in the correspondence with reference to insurance, inspection charges, and other details not necessary to be considered here and as to which there is no dispute. When the price was modified and the arrangement as to delivery changed, the statement was repeated that the price included all Mexican taxes. It was simply a contract for the purchase of crude oil and there is no evidence that it was intended as a modification or a part of the contract or contracts which plaintiff had made to sell defendant fuel oil. Plaintiff claims that the four cargoes of oil were covered by the provision that defendant should pay 62% per cent of any increase in the Mexican export tax above $0.1238 per barrel, contained in the contract of March 16,1921, but the contract for the purchase of the four cargoes of oil was made, as we have seen, by the letter dated March 11, 1921, and there is nothing in the evidence to indicate any connection between the two contracts. In fact, so far as the evidence goes it tends to show that there was no reason why the Shipping Board should have understood that the contract with reference to the four cargoes was included either in the original contract or any other. On March 14, 1921, the plaintiff wrote the Shipping *112 Board a letter in which it advised the board that it had made arrangements with the Atlantic Lobos Oil Company to furnish a supply of crude oil adequate to meet the full requirements of the contract of July 24,1920, and was ready to resume performance thereof. The letter also stated that plaintiff had purchased on March 11th four cargoes of crude oil, “ all taxes paid,” and further — “ We assume you will wish this transaction carried through, and the resumption of the contract of July 24, 1920, will take effect after these four cargoes have been delivered.” The letter went on to request that plaintiff be relieved “ from this undertaking to lift these four cargoes.” The Shipping Board replied,. “ we can not comply with your suggestion that this purchase be canceled.” Plaintiff did, it is true, write on March 23, 1921, that it understood that “ it is mutually agreeable for us to resume performance of our contract of July 24, 1920, in its entirety except as modified by your sale of four cargoes of Light Mexican Crude Oil to us.” Plaintiff' claims this letter shows that it understood the contract for the four cargoes was a modification of the original contract, and that as the Shipping Board made no reply thereto it was bound by this understanding. Conceding all that plaintiff claims for the construction of the letter, we do not think such an understanding on the part of the Shipping Board' follows for the reason that the contract for the four cargoes, had been fully executed at a prior date and at most the letter was merely a statement of how plaintiff construed the contract after it had been made.
The evidence also shows that the plaintiff and the Shipping Board continued to dispute as to whether the four cargoes came within the 1921 contract until finally, a further-contract being made with reference to the purchases of oil between plaintiff and defendant, a provision was inserted to-the effect that the execution and performance thereof should in no manner affect the rights and obligations of the respective parties with respect to the four cargoes of oil that had been in controversy. The commissioner found that the-purchase of the four cargoes “ was a transaction outside of the 1921 contract.” It is not necessary that we should go to quite that length. On this point it is sufficient that we- *113 should find, as we have (Finding VI), that “there is no evidence to show that the purchase of these four cargoes was a part of the contract, set out in Finding II, or controlled by any of its provisions, and neither plaintiff nor the Government paid any increased Mexican taxes on such cargoes.”
With reference to the second issue as to whether the amount of the four cargoes of oil should be added to or included in the amount of fuel oil held in storage by plaintiff under the contract as of June 1,1921, thereby making the Shipping Board liable to the plaintiff for 30 cents per barrel thereon, we are also obliged to say that after having carefully gone over the evidence we agree substantially to the commissioner’s finding with reference to the amount of fuel oil in storage for defendant’s account as of June 1, 1921, which finding evidently excludes the four cargoes of oil. It may be that the question should have been stated simply as to how much fuel oil there was in storage at that date, for it appears from the evidence that the amount stated by the commissioner was in fact in storage at that date, and that if the amount or quantity of crude oil in the four cargoes, reduced to fuel oil, was added to the amount stated by the commissioner as in storage, it would equal the amount claimed by the plaintiff; but there is nothing in the evidence that shows that it should be added and the ultimate question really is what amount of fuel oil was actually in storage for defendant’s account on June 1, 1921, without regard to whether any oil from the four cargoes was included therein or not. On this point we find there is no satisfactory evidence that there was any more oil in storage than stated in the commissioner’s findings.
On the third point at issue between the parties the commissioner found that between January 3 and February 2, 1922, plaintiff delivered to defendant under the 1922 contract 18,747.98 barrels of fuel oil for which defendant paid plaintiff at prices provided in the 1921 contract when payment should have been made at prices fixed by the 1922 contract. Plaintiff disputes this finding, but we agree with the commissioner and find that the amount overpaid was $16,930.82, for which defendant is entitled to credit.
*114 It is conceded that the defendant is indebted to plaintiff for the difference between the amount paid and the amount agreed to be paid for oil delivered to the S. S. Waoosta in the sum of $223.50, and also for 30 cents per barrel on the amount of crude oil reduced to terms of fuel oil as shown in the findings and held in storage for defendant’s account which amounts to $31,847.85, and also for increased Mexican taxes in the amount of $25,768.99. The total indebtedness of defendant to plaintiff is $57,840.34. On the other side of the account, plaintiff is indebted to defendant in the sum of $16,930.82, being the difference between the amount due and the amount paid plaintiff for 78,747.98 barrels of fuel oil at 21% cents per barrel. This leaves a net balance due from defendant to plaintiff of $40,909.52, for which plaintiff will be given judgment. It is so ordered.
Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, did not hear this case and took no part in the decision thereof.